UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTHONY STEWART,

    Plaintiff,

v.	CASE NO. 3:18-cv-763-J-34JBT

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying his applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. In a decision dated August 3, 2017, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 1, 2012, the alleged disability onset date, through the date of decision. (Tr. 11–23.) Plaintiff has exhausted his available administrative remedies and the case is properly

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned respectfully recommends that the Commissioner's decision be **AFFIRMED**.

I.   **Issue on Appeal**

Plaintiff makes the following argument on appeal:

> The Administrative Law Judge ("ALJ") failed to apply the correct legal standards and made findings not supported by substantial evidence regarding the opinions from Dr. Murphy and Dr. Eyassu.

(Doc. 14 at 1–2.)

II.   **Standard of Review**

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

III.   **The ALJ's Decision**

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "a history of coronary artery disease, hypertension

and lumbar degenerative disc disease, which is worse at the L4-S1 levels."[2] (Tr. 14.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 14.) Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> [T]o perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is capable of: occasionally lifting twenty pounds; frequently lifting ten pounds or less; standing or walking six hours of an eight hour workday and sitting six hours of an eight hour workday. He is capable of occasionally pushing/pulling of arm, hand and foot/pedal controls. The claimant is limited to occasionally climbing ramps and stairs, but he cannot climb ladders/ropes/scaffolds. He is capable of occasionally balancing, stooping, kneeling, crouching and crawling. The claimant has no manipulative or communicative limitations. He should avoid work at unprotected heights, work around dangerous, moving machinery, and work around concentrated industrial vibrations.

(Tr. 14–15.)

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (Tr. 21.) However, at step five, the ALJ found that, considering Plaintiff's age (fifty-four on the alleged disability onset date), education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 22–23.) Therefore, Plaintiff was not disabled. (Tr. 23.)

---

[2] The sequential evaluation process is described in the ALJ's decision. (Tr. 12–13.)

### IV. Analysis

Plaintiff argues that the ALJ erred in weighing the opinions of a treating doctor, Dr. Mark Murphy, and an examining doctor, Dr. Rahel Eyassu. (Doc. 14 at 9–17.) The undersigned recommends that the ALJ did not err regarding the opinions of either doctor.

#### A. Dr. Murphy

To discount the opinions of a treating doctor, the ALJ is required to provide "good cause*.*" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2014). Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41. The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Regarding Dr. Murphy, the ALJ stated:

> On February 17, 2016, the claimant attended a consultation with a neurosurgeon, Mark Murphy, M.D. He described bilateral lumbar spine pain that spreads into his right hip. Although the claimant reported he was working three jobs, Dr. Murphy noted he mentioned more than once that he is disabled. He observed the claimant presents himself as disabled, uncomfortable and using a cane. The claimant's spine was very tender to palpation in the sacroiliac joints. Straight leg raises were negative for radicular symptoms. The claimant had normal strength and sensation. Dr. Murphy's impression was

4

> probable bilateral sacroiliac instability due to ligamentous injury. He indicated the moderate lateral recess narrowing at L4-L5 and bilateral facet effusion may imply segmental instability. Dr. Murphy recommended physical therapy for probable sacroiliac injuries. He indicated he is not in a position to support an application for permanent disability benefits. (Exhibits 15F, 18F).

(Tr. 19.)

In addition, in giving partial weight to the opinions of a State agency doctor, Dr. Larry Meade, the ALJ stated**:**

> The undersigned notes Dr. Meade's opinion that the claimant is not precluded from performing all work activity is also consistent with Dr. Murphy's refusal to find the claimant disabled, which is given significant weight as it is consistent with the overall evidence of record which confirms ongoing conservative treatment and minimal limitations.

(Tr. 20.)

Plaintiff argues that the ALJ erred in misinterpreting Dr. Murphy's opinion and in failing to recognize that Dr. Murphy offered to provide Plaintiff with work restrictions. (Doc. 14 at 10–13.) The undersigned recommends that both arguments be rejected. First, it was reasonable for the ALJ to conclude that Dr. Murphy did not agree with Plaintiff that Plaintiff was disabled, despite Plaintiff attempting to present himself as disabled and despite Plaintiff's insistence that he was. As the ALJ noted, on February 17, 2016, Dr. Murphy indicated that Plaintiff told him "I can't work, I have applied for disability, and been turned down 4 times." (Tr. 758.) Further, Dr. Murphy indicated that Plaintiff "mentions more than once that he is disabled." (Tr. 758.) Also, Plaintiff presented "himself is [sic] disabled

5

and uncomfortable and uses a cane."[3] (Tr. 759.) Despite Plaintiff's statements and presentation, Dr. Murphy concluded: "I am not in a position to support and [sic] application for permanent disability benefits." (Tr. 759.)

On April 6, 2016, Dr. Murphy noted:

> Lumbar dynamic films done on 2/22/16 show a very mild dextroconvex curvature and no significant disc space narrowing and normal alignment, contour, and disc space height and no segmental instability.
>
> I have confirmed a degree of lateral recess stenosis at L4-5, as is suggested on MRI of 12/21/15, not associated with central canal stenosis or sciatica. I also believe that the patient has sacroiliac joint dysfunction.
>
> The patient seems to expect from me a statement supportive of a total disability, which I will not provide. He maintains that he is unable to work and has been having pain for 8 years and has had numerous opinions from different doctors.
>
> I explained again today the diagnoses and my treatment recommendations. He wants to know how he's supposed to pay for them. He wants to be awarded disability so that he can get "Medicaid" and have treatment. He asks for a handicapped parking sticker.
>
> I could place appropriate work restrictions if that will be of benefit for the patient.
>
> There is no need for neurosurgical follow-up at this time.

(Tr. 750.) Based on the foregoing notes, the undersigned recommends that the ALJ did not err in giving significant weight to Dr. Murphy's refusal to find Plaintiff

---

[3] As the ALJ recognized, on May 25, 2017, Plaintiff was "ambulating normally," according to Plaintiff's primary care physician, Dr. Sharrell Cooper. (Tr. 20, 714.)

6

disabled. Further, the ALJ reasonably interpreted Dr. Murphy's opinion.

Moreover, to the extent Plaintiff is arguing that the ALJ had an affirmative duty to contact Dr. Murphy to ascertain what work restrictions he would give Plaintiff, the undersigned recommends that such argument be rejected. First, it is not clear that Plaintiff is making this argument. (Doc. 14 at 11–12.) Second, if he is, he cites no authority in support of it. (*Id.* at 10–13.) Thus, the Court could decide that this argument has been waived. (*See* Doc. 13 at 1–2 ("Any issue not specifically raised by Plaintiff will be considered to have been waived unless the interests of justice require the Court to consider the issue.").)

In addition, the undersigned recommends that the argument has no merit. First, although the ALJ did have an obligation to develop a full and fair record, it was not a special duty because Plaintiff was represented by an attorney. (Tr. 59–61.) *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. . . . [T]he ALJ's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him.") (internal quotation marks and citation omitted). *See also Burgin v. Comm'r of Soc. Sec.*, Case No. 6:09-cv-1233-Orl-DAB, 2010 WL 2510650, at *9 (M.D. Fla. June 21, 2010), *aff'd*, 420 F. App'x 901 (11th Cir. 2011) ("[T]he heightened duty to develop the record . . . from *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), applies when claimants are not represented . . . ."). The ALJ could reasonably

7

conclude from Dr. Murphy's note that Plaintiff and/or his attorney disregarded Dr. Murphy's offer to provide Plaintiff with work restrictions, as such restrictions would not be "of benefit" to Plaintiff.  (Tr. 750.)

Additionally, there was no need to contact Dr. Murphy to develop the record further because the evidence already in the record, and upon which the ALJ relied, was sufficient for the ALJ to assess Plaintiff's asserted limitations.  *See Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 972 (11th Cir. 2014)[4] (holding that ALJ did not err in failing to recontact treating physician where record was sufficient to determine whether Plaintiff was disabled); *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 879 (11th Cir. 2014) (finding no reversible error where ALJ did not contact treating physician for further clarification of treatment notes because record allowed the ALJ to make a "conclusive determination regarding [Plaintiff's] disability status").

Finally, Plaintiff has not shown that he was prejudiced by the ALJ's failure to contact Dr. Murphy.  *See Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008) (in determining whether an ALJ's failure to recontact a treating source warrants remand, the court is guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice"); *Harrison,* 569 F. App'x at 879 ("Without

---

[4] Although unpublished Eleventh Circuit opinions are not binding precedent, they may be persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits a court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

8

any demonstration that the record was inadequate or led to unfairness or clear prejudice, we cannot say that the ALJ committed reversible error by choosing not to contact [the treating physician] for additional information."). In this case, Plaintiff "has not shown that [he] suffered prejudice as a result of any failure of the ALJ to perform further factfinding, because there is no evidence [the] ALJ's decision would have changed in light of any additional information." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Thus, the undersigned recommends that the ALJ did not err in addressing the opinions of Dr. Murphy.

### B. Dr. Eyassu

In order to discount the opinions of Dr. Eyassu, the ALJ only had to provide adequate reasons supported by substantial evidence. *See McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 924 (11th Cir. 2006) (finding no reversible error "[b]ecause the ALJ gave specific reasons for according no weight to [an examining physician's] opinion, and because the ALJ based his decision on substantial medical evidence").

Dr. Eyassu examined Plaintiff on two occasions, first on February 15, 2012, and then again on August 19, 2014. (Tr. 451–57, 527–32.) Plaintiff argues that the ALJ erred regarding the opinions of Dr. Eyassu on both occasions. (Doc. 14 at 13–17.) Regarding the February 15, 2012 examination and opinion, the ALJ stated:

> On February 15, 2012, the claimant presented to Rachel [sic] Eyassu, M.D., for a consultative examination on behalf of Disability Determination Services. The claimant

> admitted he is not taking any medication on a regular basis for his cardiac issues.  He reported occasional pressure in his chest when he is under stress or when he gets emotionally upset.  The claimant also described a history of lower back pain since his bus accident.  He reported he had a MRI which showed a herniated disc.  On examination, the claimant had some tenderness to palpation over the right paralumbar muscle.  Range of motion was largely intact.  The claimant's neurological examination was also intact.  Dr. Eyassu's diagnoses included a history of myocardial infarction and chronic lower back pain with radicular symptoms.  Dr. Eyassu opined the claimant should avoid prolonged sitting, activity with repetitive bending and activities with heavy lifting due to his back pain (Exhibit 4F).
>
> The undersigned gives little weight to Dr. Eyassu's opinion of limitations as they are inconsistent with the physical examination findings.  Although there was evidence of some tenderness on examination, there were no significant limitations or functional abnormalities noted.  The claimant did not have decreased strength and his neurological examination was intact.  Furthermore, the claimant sought little treatment for his alleged back pain prior to the consultative examination.  Treatment records from Dr. Patel do not corroborate such extensive limitations.  Subsequent x-rays performed shortly after Dr. Eyassu's opinion were negative for degenerative joint disease (Exhibit 6F).

(Tr. 17.)

The undersigned recommends that the ALJ's reasons for giving little weight to Dr. Eyassu's aforementioned opinions are adequate and supported by substantial evidence.  Plaintiff's arguments essentially ask the Court to reweigh the evidence, which is not this Court's function.  (*See* Doc. 14 at 13–17.)  For example, Plaintiff takes issue with the ALJ's statement that Plaintiff sought little treatment for his alleged back pain prior to the examination.  (*Id.* at 14–15.)

10

However, in support of this argument, Plaintiff cites only two emergency room visits in 2007 and 2008 (Tr. 368–406, 407–24), well before Dr. Eyassu's examinations and the alleged disability onset date. (Doc. 14 at 14.) Substantial evidence also supports the ALJ's statement that Dr. Patel's treatment records do not corroborate Dr. Eyassu's limitations. The only document Plaintiff cites that arguably suggests otherwise is a treadmill exercise tolerance test from 2008, which merely notes "subjective distress" at certain stages of the test. (Tr. 446.)

Plaintiff also argues that the "ALJ held his poverty against him." (Doc. 14 at 14.) In *Henry v. Commissioner of Social Security*, 802 F.3d 1264, 1268 (11th Cir. 2015), the Eleventh Circuit stated: "When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration." The undersigned recommends that this case is distinguishable from *Henry* because the ALJ did not rely "primarily if not exclusively" on Plaintiff's failure to seek treatment. As shown above, the ALJ gave a number of reasons for discounting the opinions of Dr. Eyassu. Moreover, the ALJ adequately addressed Plaintiff's allegations that he could not afford certain treatment. The ALJ noted Plaintiff's hearing testimony as follows:

> After moving to Florida, the claimant applied for medical care through Azalea Health, Flagler Hospital and a private organization, though he was somewhat unclear as to what happened with these applications . . . . Although the claimant testified he has been unable to treat regularly with a specialist due to his finances, he has not provided evidence beyond his testimony that he has

11

>>been turned down for low cost or no cost medical treatment. Furthermore, the undersigned notes the claimant has continued to smoke suggesting his finances are not as limited as he has alleged.

(Tr. 15, 20–21.)  In short, the undersigned recommends that the ALJ did not "primarily if not exclusively" rely on a lack of treatment and did consider Plaintiff's explanation in that regard.  Moreover, the undersigned recommends that the ALJ's reasons for discounting Dr. Eyassu's February 15, 2012 opinions are adequate and supported by substantial evidence.

On August 19, 2014, Dr. Eyassu provided different limitations for different reasons.  The ALJ summarized this examination as follows:

>>On August 19, 2014, the claimant attended a second consultative examination with Dr. Eyassu in New Jersey. He explained he has taken Nitroglycerin on only 9 occasions for chest pain as he usually rests until the pain resolves spontaneously.  The claimant described chest pain with a stressful environment or prolonged walking. The claimant estimated he is able to walk one-half of a mile prior to getting shortness of breath and chest tightness.  In addition to chest pain, the claimant also reported back pain from his prior bus accident. He stated he may have radiating pain if he bends or gets up suddenly.  The claimant denied numbness and tingling. X-rays of his lumbar spine showed a very mild dextroscoliosis.  The disc spaces were maintained throughout.  On physical examination, the claimant had a full range of motion in his upper and lower extremities, cervical spine and lumbar spine.  The claimant's motor strength was 5/5, though his lower extremity reflexes appeared to be decreased to 1+.  Dr. Eyassu opined the claimant is limited for prolonged walking, prolonged stair climbing, moderate to heavy lifting and sustained pulling and pushing due to his angina (Exhibit 7F).

(Tr. 18.)

In addressing Dr. Eyassu's opinions from this examination, the ALJ stated:

> [T]he undersigned gives little weight to Dr. Eyassu's more recent August 2014 opinion of limitations due to angina. Dr. Eyassu's opinion is inconsistent with diagnostic testing throughout the record that is negative for angina. Furthermore, on the occasions the claimant was treated at the ER for his alleged chest pain, he was released without limitations.  The claimant's cardiologist, Dr. Joiner, also failed to find the claimant is unable to work or has limitations on his ability to do so as a result of cardiac conditions.  Dr. Joiner recommended regular exercise.

(Tr. 20.)

The undersigned recommends that these reasons are adequate and supported by substantial evidence.  Furthermore, the undersigned recommends that Plaintiff is again in effect arguing that the Court should reweigh the evidence. (Doc. 14 at 13–17.)  For example, although Plaintiff argues that it is "not true" that his diagnostic testing was negative for angina, he does not cite any diagnostic test that found angina.  (*Id.* at 16.)  Rather, he points to testing that was done because of an indication of angina, but that did not confirm angina.  (Tr. 571, 575.) Moreover, Plaintiff's cardiologist, Dr. Thomas Joiner, who reviewed, interpreted, and/or performed such testing concluded that Plaintiff had "[c]oronary artery disease without angina pectoris."  (Tr. 565.)  Plaintiff's prior treating cardiologist in New Jersey, Dr. Constantinos Costeas, noted in part that Plaintiff had "[p]leuritic type chest pain."  (Tr. 554.)  Moreover, the ALJ was correct that Dr. Joiner placed no limitations on Plaintiff and recommended a "heart healthy diet, regular aerobic exercise, lipid level monitoring, avoidance of tobacco, and appropriate weight

13

maintenance." (Tr. 565.) Thus, the undersigned recommends that the ALJ did not err in addressing Dr. Eyassu's August 19, 2014 opinions.

## V. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on February 7, 2019.

*[signature: Joel B. Toomey]*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record